JUSTICE.GABRIEL,
dissenting.
131 In its petition for an order to show cause pursuant to C.A.R. 21, the State asserted that one week before trial and without the benefit of briefing or argument from the parties, the district court had issued two orders, ruling sua sponte that charging high prices is not deceptive or unjust if the prices were accurately disclosed. The State claimed that (1) the district court's rulings reflected the first time that the court had suggested that the market rates for the services at issue were irrelevant to the State's case and (2) the district court's eve-of-trial rulings foreclosed the State from presenting its principal theory of the case. Based on these contentions, we issued the requested order to show cause,
82 Because the subsequent briefing that we received from the defendants in this case showed that the State's representations of the record were incorrect, and because it is not clear to me that the district court misunderstood the claims as set forth in the State's amended complaint, I would vacate the order to show cause and dismiss this appellate proceeding.
133 Accordingly, I respectfully dissent.
I. The Distxjict Court's Rulings
134 In its CAR. 21 petition, the State challenged the district court's January 7 and January 11, 2016 orders.
135 In the January 7, 2016 order, the court (1) granted the motion of defendants The Castle Law Group, LLC, Lawrence E. Castle, and Caren A. Castle (the "Castle Defendants") to limit the testimony of Matthew Lausten, whom the State had designated as an expert witness, and (2) granted in part and denied in part the motion of defendants Absolute Posting & Process Services, LLC, Ryan O'Connell, and Kathleen Benton (the "Absolute Defendants") to exclude Lausten's testimony. In so ruling, the court stated:
*137 -As I indicated in my Order dated December 28, 2015, the market rates for posting, serving or title work are themselves irrelevant to Plaintiffs' cognizable claims.... The [Colorado Consumer Protection Act ("CCPA")] claim is grounded on the allegation, that the Castle Defendants exceeded their contracted-for or regulated fee limits by charging excess fees in the guise of posting, serving or .title charges. It doesn't matter whether those charges were over or under "market" rates; what matters is if any portion of them found their way to the Castle Defendants as disguised attorney fees in sufficient amounts and under cireumstances making the scheme deceptive. |
136 The next day, the State filed a. motion to clarify the court's January 7, 2016 order, and this resulted in the January . 11,' 2016 order, In that order, the court -began by stating, "I appreciate the opportunity to restate the rulings I have made throughout this case, although I am a little surprised it is necessary at this late date." The court continued:
Charging high prices is not deceptive or unjust, as long as those prices are accurately disclosed. Charging high prices is not unlawful, as long [as] those prices have not been capped by state price controls and are not the product of an antitrust violation. Incanting legally unrecognizable phrases such as "vastly inflated invoices" does not change this state of affairs, The only reason I did not knock out all of the non-antitrust claims on dispositive motions is because I read Plaintiffs complaint to allege that some part of these high prices were kicked back to the Castle Defendants in a scheme to avoid contractual or regulatory caps on their attorney fees. That is the only strand keeping these claims alive, and it is the only strand on which I will permit evidence.
137 These orders disposed of motions properly pending before the court, and thus, they were not issued sua sponte. Moreover, notwithstanding the State's assertion to the contrary, it appears that the State had a full opportunity to be heard on each of these motions.
188 In addition, and again contrary to the State's assertions, these rulings did not reflect the first time that the district court had expressed the views set forth therein, Nor could the State reasonably claim surprise at these rulings. To the contrary, the court had expressed the same views, and it had articulated the same understanding of the State's claims, on repeated occasions beginning in November 2014 and continuing until the time that the court issued the two rulings at issue.
139 Specifically, the court entered the following pertinent orders, none of which was attached 'to the State's C.A.R. 21 petition:
.® November 18, 2014-in denying a mo-__ tion to dismiss filed by defendants RE Records Research, LLC ("RERR") and 'Colorado American Title, LLC ("CAT"), the court agreed with these defendants' argument that "charging an "inflated amount, or an amount 'above the market price, is meaningless and non-actionable as long as the amounts RERR and CAT charged the Castle Defendants were accurately disclosed 'and billed." The court further noted its understanding of "the gravamen of Plaintiffs® CCPA claim" against © these defendants, which was that "they acted in concert with the Castle Defendants to misrepresent the amount of the Castle Defendants' attorney fees to their creditor clients, as well as to Fan-nig Mae and Freddie Mac." The court explained that the State had alleged that Fannie Mae and Freddie Mac had negotiated a flat attorney fee with the - Castle Defendants and that the Castle Defendants had effectively exceeded those flat fees but concealed that fact by taking additional attorney fees in the form of "inflated" costs of the title work and by using a related company, CAT, to do 'so. Finally, the court observed that the State had alleged that the Castle Defendants had received payments back from RERR in various forms. The court concluded that these allegations were sufficient to state CCPA claims against RERR and CAT because those defendants' conduct was "part and parcel of Defendants' alleged *138 scheme to hide the real price of the Castle Defendants' attorney fees by overstating the actual cost: of the title work," >
e December 3, 2014-the court denied a motion to dismiss filed by the Absolute - Defendants. As pertinent here, the court concluded that the State had sufficiently pleaded a CCPA claim by alleging that (1) the Absolute Defendants had "conspired with the Castle Defendants to increase their posting charges as a way to charge their lending clients more than the maximum legal fees they agreed with Fannie Mae and Freddie Mac to charge" and (2) the Absolute Defendants billed these artificially inflated rates and then "kicked back" a portion of those charges to the Castle Defendants.
e May 15, 2015-the court granted in part and denied in part the Castle Defendants' motion to compel and for sanctions against the State. In so ruling the court referred back to its November 18, 2014 order and reiterated its view that "there is no cognizable legal claim for 'inflated' costs." The court added, however, that it read the State's claims to allege that
what the Castle Defendants were really doing was charging attorney fees in excess [of] their agreed-to limits in the guise of these other foreclosure costs, which ultimately they received either indirectly, because these providers were related entities formed by the Castle Defendants, or directly, because unrelated providers kicked some portion of these costs back to the Castle Defendants.
The court further stated, "I agree with Plaintiffs that it is these claims, and not the subject matter of Plaintiffs' investigation into the foreclosure industry generally, that define the boundaries of discovera-bility in this case."
e -September 14, 2015-the court, in per- \ tinent part, denied the State's motion . to compel discovery from Absolute Posting. In so ruling, the court referred to "the now central issue in this case of whether the Castle Defendants inflated their fees by having Absolute Posting and other vendors inflate the costs of their services, and then pay some of that inflated cost back to the Castle Defendants."
on State's motion to compel discovery from a third-party and the third-party's reciprocal motion to quash a subpoena served on it, the court stated:
The central fact question in this case is whether Defendants entered into a scheme with each other to enable the lawyer Defendants to charge attorney fees for foreclosure services in excess of contracted-for or regulated limits, by taking back portions of posting and title work charges from the posting and title Defendants performing those services. To prove this kickback scheme, Plaintiffs will have to prove that the lawyer Defendants, directly or indirectly, received monies back from the posting or title Defendants.
(Footnote omitted.) The court further stated, "What matters in this case is whether the lawyer Defendants received kickbacks from posting and title providers."
e -December 28, 2015-the court granted in part and denied in part the Absolute Defendants' motion for summary judgment. As pertinent here, the court denied summary judgment on the CCPA claim, finding, "Although it seems Plaintiffs have no evidence that the Absolute Defendants kicked back any 'inflated' posting or service charges directly to the Castle Defendants, it does appear that the Castle Defendants may have indirectly benefitted from these charges...." In so ruling, the court rejected the Absolute Defendants' contentions that (1) there was no evidence that the price that they charged was inflated beyond the market price and (2) the State's evidence of market price was "cherry-picked" and not reliable. The court rejected these assertions "for the simple reason that market price is not an issue in this case." Finally, the court reiterated its long-held under *139 standing of the State's allegations: "Plaintiffs contend, and will have to prove, that the Absolute Defendants conspired with the Castle Defendants to inflate the Castle Defendant's permissible fees, thus injuring the clients of the Castle Defendants."
140 The State does not, and in my view cannot, show that what the district court said in the January 7 and January 11, 2016 orders was different in any way from what the court had said repeatedly (and without apparent objection from the State) since November 2014. To the contrary, the above-described orders belie the State's assertions that on the eve of trial, the district court, without warning, gutted the State's case by ruling sua sponte and for the first time that (1) charging high prices is not deceptive or unjust if the prices were accurately disclosed and (2) the market rates for the services at issue were irrelevant to the State's case. Accordingly, the above-described orders undermine the basis for the State's request for extraordinary relief pursuant to C.A.R. 21.
141 For these reasons, I would vacate the order to show cause and dismiss these appellate proceedings.
IL The Amended Complaint
142 Even were I to conclude that the State's CAR.. 21 petition warranted the granting of an order to show cause, I would not make that order absolute because the State has not persuaded me that the district court's understanding of the State's allegations was incorrect, much less so far off the mark as to require this court's extraordinary intervention.
48 Although, as the district court pointed out, the amended complaint is replete with conclusory allegations of inflated and above-market costs and fraud, the mere fact that the defendants allegedly charged inflated or above-market prices would not alone establish viable CCPA claims against them. Rather, as pertinent here, the State must prove that the defendants made false or misleading statements of fact concerning the prices of their services. See § 6-1-105(1)(F), C.R.S. (2015).
1144 Here, as noted above, the district court repeatedly and consistently expressed its understanding of the false and misleading statements at issue. Specifically, the court read the State's amended complaint to allege that (1) the Castle Defendants conspired with the other defendants to charge inflated prices for foreclosure-related services and (2) this scheme was devised to allow the Castle Defendants to avoid their fixed attorney fee contracts with Fannie Mae and Freddie Mac, as well as any regulatory caps on such fees.
45 The court's understanding finds ample support in the State's amended complaint. For example, in paragraph 65 of the amended complaint, the State alleged, "Despite agreeing to perform foreclosures for a maximum allowable fee per file, the Castle Defendants viewed this fee as insufficient. Accordingly, they devised a scheme to cireumvent the maximum allowable fee by inflating foreclosure costs to make millions above and beyond the maximum allowable fee."
46 Likewise, in paragraph 73 of the amended complaint, the State alleged:
As set forth in detail below, the Castle Defendants intentionally cireumvent the maximum allowable fee by making false, misleading, and deceptive statements about the actual costs they incur in processing a foreclosure to obtain millions of dollars in unjust enrichment, either through manipulating the invoicing of an affiliated entity or through misrepresentations of fees as costs.
47 Accordingly, I cannot say that the district court's understanding of the State's allegations was incorrect or so extraordinary as to warrant this court's immediate intervention. To the contrary, the court's understanding was consistent with the State's allegations as reflected in the amended complaint, As a result, even were I not inclined to dismiss these appellate proceedings, I would discharge the order to show cause.
HII. Conclusion
148 For these reasons, I respectfully dissent.
*140 I am authorized to state that JUSTICE HOOD joins in this dissent,